Good morning, Your Honors. Lauren Eskenazi for Petitioner Daniel Esparza. I'd like to reserve five minutes for rebuttal. Thank you. Strickland v. Washington is a case about ensuring that we preserve the adversarial process. And in this case, that didn't happen. We had a fundamental breakdown of the adversarial process, and how that happened was one of the most exculpatory facts in the case presented by the prosecution was really never brought to light. It was introduced as evidence, as testimony from the coroner, but it was then just never commented on, and more importantly, misrepresented by the prosecution at the time of closing argument, consistently throughout the closing argument, five distinct times. And that is that the failed shot in this case came from a 9mm bullet. And this is absolutely imperative and critical to the case, because the defendant, Daniel Esparza, was found in possession of a gun that was also present at the shooting, but shot . . . 40 caliber bullets. Well, the prosecutor . . . I just want to be sure I understand your argument. The prosecutor didn't say it came from a 9mm . . . That's absolutely right. What you're arguing is he argued that the gun was the gun that was used to commit the murder. That's right, Your Honor. But you acknowledge, and I think it's fair to say that that was an inference that certainly the jury could have drawn from the evidence. And so why, if that was an inference that the jury could have drawn from the evidence, why couldn't the prosecutor argue it in the way that he did? Because he definitively says that the gun possessed by the defendant was the murder weapon, and that was a complete misstatement of the facts. It may have been, and he could have argued . . . So you should have said, I think you should easily infer that the gun was used. Is that the difference? That is the difference, because it's not an unrefuted fact. In fact, it's the most important fact in the trial. And what's more important under Strickland v. Washington is having effective assistance of counsel and the adversarial process. So clearly the most . . . Well, I guess I worry about that statement that it was the most important fact. It seemed to me from reading the record, and I read through it pretty well, that I agreed with the superior court. The ballistics evidence wasn't the linchpin of the evidence at all. The linchpin was whether Chavez lied to the police and the prosecutor when he ID'd your client. I mean, it seemed to me that that was the key of this case. If Chavez was a liar, well, your client would have got off. But the jury thought Chavez wasn't a liar. It seems that it was reasonable to attack then Chavez's credibility. It was reasonable to attack. And to say that the gun was just incidentally in the car or given to your client by someone else at the scene, which was his effort in argument as well as in what he did. There are two shooters at the scene. We have casings from a .40 caliber and we have casings from a 9mm. And we have the coroner who gives us the only evidence that the fatal shot is a 9mm bullet. I understand that that's your best argument now. I guess I'm trying to suggest when I read the evidence, and if I'm really looking at really was this a problem, I look at what is the evidence. And he linchpinned the whole thing on Chavez being a liar. And I thought that was pretty good because if they believed Chavez, it was over. And then he attacked then Chavez's credibility and said the gun was just incidentally in the car, therefore adopting a different defensive posture than you now articulate. Well, with all due respect, there are two shooters. And even if Chavez did see Esparza at the crime scene shooting that .40 caliber, even if that's true and you never refute it, even though there's tons of reasons to refute it, the fatal bullet is still the 9mm. It is the linchpin of the case. So even if that's all true, it's the other shooter that gives the fatal shot. You say that it was the 9mm with a kind of degree of certainty that I don't think is present in the record. You have two witnesses testifying otherwise. And as I understand it, it's theoretically possible to use a 9mm in a Glock gun, although there's no guarantee that you're going to get the result that you want. With all due respect, in the realm of anything's possible, that is true. But really, even Sachs testifies that if you put the wrong ammunition in the gun, it's going to ricochet and it doesn't make really sense. So only in the realm of anything's possible. And the other ballistics expert never says what the fatal shot is, says it's inconclusive, says it's consistent possibly with a .40 caliber. There's only one expert witness brought on by the prosecution that actually positively identifies the fatal shot as being from a 9mm gun. How can the defense not bring that to the light? How can the defense not correct the prosecution when he misstates that the fatal shot could only be from a .40 caliber? That's not the evidence. That's not the totality of the evidence. Judge Gould had a question and I think we interrupted him. I apologize. Counsel, my question is this. I thought that the ballistics evidence was inconclusive, that the bullet within the victim was deformed and that the ballistics experts basically said it might have come from either gun. That's incorrect with all due respect. One, there are two ballistics experts. Sachs testifies it's inconclusive and possibly consistent with a .40 caliber or a 10mm. And the coroner very clearly states he identified the fatal shot as being from a 9mm bullet. And there's one sentence on that in his testimony and then it is never discussed again by the defense, never highlighted. So even if the defense chose to emphasize the believability of Chavez's recantation of his identification, that still does not justify leaving this unbelievable exculpatory evidence that would have rebutted the prosecution's case because the prosecution did rely on ballistics. The prosecution relied on ballistics. So even the defense decided that. Yes, but the most you have, and this is what Judge Gould may have been alluding to, is assuming you characterize the coroner as an expert in ballistics, and I know you say that the California courts tend to do that, you have two other experts for which you do not need citations saying that it was a 10 caliber or a 14 caliber, a 40 caliber that could have been. There's only one other expert, and that expert said opines it's inconclusive. She cannot determine what the fatal bullet is. She says it's inconclusive, possibly consistent with a 40 caliber or a 10 millimeter, and the coroner decisively says it's a 9 millimeter. So you have a conflict in the evidence, but only one expert, a prosecution expert, identifies the bullet positively, the fatal shot, being from a 9 millimeter gun. The issue is not whether which expert was correct. The issue is a strickland issue of ineffective assistance of counsel, whether it could be justifiable at all for the defense not to bring that fact to life. Well, even if there were error, I'm wondering again, because it seems to me reading the transcript the jury believed Chavez. I mean, I thought the defense tried to do what they could to limit the jury believing Chavez, but it seems as if the jury believed Chavez when he talked to police and the prosecutor. They thought that what he said at court was a product of fear, so then with the ballistics evidence even disputed at trial, the jury just didn't buy it. I mean, that was the bottom line. Well, two points, Your Honor. First of all, the jury is actually deadlocked and doesn't make a decision until they reread the stipulation, which shows that Esparza possessed the gun connected with a .40 caliber two weeks after the crime. But secondly, so one, I think the jury was very much on the fence. Yes, ultimately they disregarded the recantation, but that's not the issue. The issue is was there a reasonable probability the jury would have come to a different conclusion had the defense argued the nine millimeter fatal shot. That's what Strickland's about. We're not asking what clearly the jury ultimately decided to believe in Chavez's original identification. I mean, there's no question about that. We have a conviction. That's the only thing it can be based on. And the question is whether it was a close case, which is demonstrated by the fact that it was a deadlocked jury decided by really rereading the stipulation, and the absence of arguing that just because Esparza possessed one of the guns present at the crime scene two weeks after the shooting, what rules him out as the shooter? The fact that the fatal shot is a nine millimeter gun, that's ineffective assistance of counsel, and that's what the case is about, not what the jury could have decided. The question is was there a reasonable probability the jury would have decided differently had the defense attorney took advantage of this most exculpatory evidence that the fatal bullet was a nine millimeter. And as I understand, your argument isn't that trial counsel did not address the issue during trial, but that he did not raise it in closing? No. I mean, at trial he said there's no conclusive evidence that the fatal shot came from the .40 caliber weapon. But that's not enough. I understand you're saying it's not enough, but I guess my biggest, I'm trying to understand your argument. Your argument is, and I read the transcript, the fact that he didn't raise it in closing, that's the problem. There's multiple problems, and the AOB talks about not objecting to the closing arguments, the misstatement of facts in the closing arguments, not cross-examining the detected thing. I don't want to interrupt you, but the misstatement is that the argument was that this was the gun. It's really, it's the same argument. I'm not understanding, Your Honor. What you're claiming is that he should have objected when the prosecutor referred to the weapon, the Glock. The murder weapon. Because their argument was that he only possessed the murder weapon two weeks after the crime, so there's no proof that he had it at the day of the shooting. No, I understand that. And it's that it may have been the murder weapon because we don't, one expert identifies the fatal shot as being from a 9mm and one inconclusive. All I'm saying is that it's the same argument. It is the same argument. I'm sorry, I thought we were just focusing on closing arguments versus what exactly defense trials specifically should have done. And I'm saying objected to closing argument, incorporated it into her closing argument, and impeached Detective King, who kept talking about Detective King and the other ballistics expert, Star Sacks, about the 9mm bullet. That should have been a highlight in the trial. So it should have been in cross-examination of the prosecution witnesses on the topic, objecting to closing argument of the prosecution and incorporating it into her own closing argument. It should have been a central theme in her case, and there was no reason to argue one theme at the exclusion of the other, particularly when they were not contradictory at all. They completely complemented each other. So you have two minutes left. Would you like to save that for some rebuttal? I would. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Deputy Attorney General Joseph Lee on behalf of Respondent. In this case, the State Court's decision finding that trial counsel was not ineffective in how she handled the ballistics evidence was a reasonable application of Strickland. As to trial counsel's handling of the ballistics evidence in this case, two 9mm shell casings were found 210 feet south of the .40 caliber casings. Using that evidence, trial counsel elicited from the prosecution's firearms examiner that she was never given any 9mm casings to test. Next, she elicited from the coroner that his report indicated that the bullet recovered from the victim measured 9mm in diameter. Then, based on that evidence, in closing argument, she argued that the 9mm casings were, quote-unquote, being ignored. As to whether or not Petitioner was a shooter and whether the handgun recovered and the car Petitioner was in was used to shoot the victim, trial counsel elicited from the prosecution's gang expert that oftentimes gang members pass off hot guns that have been used in crimes from one gang member to the next or two members of other gangs. Then, using that evidence, she argued that despite being in the car that the gun was found in, Petitioner was not the shooter since he may have just been the recipient of a hot gun that had been passed off to him. And she also argued that there was no proof that appellant possessed the gun on the day of the shooting and that the only eyewitness tying him to that gun was Orlando Chavez. But counsel's argument is to focus on Chavez and the fact that the gun just may have been given to him was not enough, she should have emphasized the 9mm in diameter issue. Well, Your Honor, the 9mm measurement came from the coroner and it was just a measurement that there was a deformed bullet which measured 9mm in diameter. On redirect by the prosecutor, the coroner admitted that he was not a firearms expert or a ballistics examiner. On the other hand, the firearms expert testified that the bullet was consistent with either a 10mm or 40 caliber bullet, not a 9mm bullet. So I think under the circumstances it was entirely reasonable for trial counsel to simply just sort of throw out the possibility that there were 9mm casings found at the scene, they were being ignored by the prosecution and therefore possibly someone else could have done the shooting. But then to focus on discrediting the eyewitness identification testimony, which was really the most damaging to petitioner's case. Counsel, I'd like you to address one point you raised. You argued that the state appellate court decision was a reasonable application of Strickland. Now, although it may sound like the same thing because of a double negative, but I thought that the Supreme Court has told us that we should reject the state court decision only if we can say that it was objectively unreasonable. That is, we don't have to say it's reasonable. We should get relief if it's objectively unreasonable. Well, Your Honor, the state court's decision was not objectively unreasonable in this case. It was an entirely reasonable application of Strickland. I understand that. Isn't that the standard, though, that we should be looking at? Not whether we think it was reasonable, but whether it was objectively unreasonable. I think, in essence, we're saying the same thing, whether or not it was objectively unreasonable or whether or not it was reasonable under Strickland. I think there are, in essence, two sides of the same coin here. But doesn't it seem that, taking up my colleague's question, doesn't it seem that we are not to judge this on an objective reasonableness standard, but it's got to be unreasonable, in other words, a standard lower than objectively reasonable in our determination of what the court did. We're giving the court more latitude in what they did. I think that's what Judge Gould's trying to have you think about. Well, assuming you're assessing the decision as to whether it's objectively unreasonable, it was certainly not objectively unreasonable under the circumstances. In terms of whether trial counsel should object to the prosecutor's argument, it was entirely reasonable for trial counsel to avoid doing so, because the prosecutor simply argued reasonable and logical inferences from the evidence during closing argument, and therefore any objections to the prosecutor's argument would have been overruled. Specifically, the firearms expert testified that the bullet recovered from the victim was consistent with either a 10-millimeter or .40-caliber bullet. Two .40-caliber casings were recovered directly across the street from where the victim was shot, and those .40-caliber casings were tested and determined to have been fired from the Glock .40-caliber handgun recovered a few weeks later in the car Petitioner was found in. Therefore, since no 10-millimeter casings were recovered from the scene, the reasonable inference was that the bullet recovered from the victim was a .40-caliber bullet and that, therefore, the victim was shot with a .40-caliber Glock handgun. Can I ask you a couple of questions on other arguments that have been made here? Yes, Your Honor. First, there was apparently an investigator hired by the defendant who determined that Jesus Romero had been identified as the shooter in the Esparza case. However, the LAPD ruled him out as the shooter based upon an alibi, and I'm going to leave out the rest of it. The conclusion is, as instructed presumably by defense counsel, Romero will not be contacted. Without a hearing, what does one make of this? Should the investigator and, by implication, defense counsel, have accepted the statement that the LAPD ruled him out as the shooter without further investigation? On what basis did they rule him out? And the alibi was that he was in Mexico, and presumably there are records of people who crossed the border assuming they do it lawfully. Well, first of all, Your Honor, the claim is utterly deficient because it relies just on a single ambiguous statement made in the defense investigator's report. Quote, Jesus Romero had been identified as the shooter in Petitioner's case. Well, the argument isn't that there should have been an acquittal based on this. The argument is that more should have been done than simply relying on that, that the LAPD ruled him out and some checks should have been made to confirm the alibi, including talking to Romero. Well, Your Honor, we don't know what trial counsel did or didn't do, and that's precisely because of the deficiency on Petitioner's part. It's Petitioner's burden to prove deficient performance, and he hasn't here. He's failed to show that the identification, in fact, came from an eyewitness, that that eyewitness was identifiable and available to trial counsel and that the witness was available to testify. He's failed to show any of that. So his showing is wholly deficient. Did he show enough to warrant some kind of a hearing? No, he hasn't, Your Honor, because on these facts and based on his deficiency in the pleading, he has not shown that the state court's decision rejecting the claim was objectively unreasonable. Well, it's not a question of whether he's entitled to relief on that basis. The question is whether there should have been, before his argument was rejected, whether there should have been some sort of a hearing, which brings me to the second point that I wanted to raise with you. Apparently, although it's not clear whether it's within the ambit of the certificate of appealability, there's an argument that the petitioner makes that there were two people who actually saw the shooting and they were shown a photographic array in which the petitioner's photo was one of the photographs and they didn't pick him out. And I assume that's relevant evidence that would be admissible, that eyewitnesses who saw the shooting did not pick the defendant out. It might be. Well, first of all, it's our position that that's not within the ambit of the certificate of appealability. To the extent that it might be, again, the deficiency is on petitioner's part. It's petitioner's burden. We do not know whether these witnesses were made available to trial counsel, what reasons she may or may not have had for calling these witnesses. There could be a myriad of reasons why she could have chosen not to call these eyewitnesses, and we don't know what those reasons are. And that failure of proof or that failure of pleading is on petitioner. Why shouldn't it be on you? Why isn't the issue whether they've come forward, whether the petitioner has come forward with enough to suggest that the burden should be on you to go to the defense counsel and say, why didn't you do this? Because under Strickland, Your Honor, it's petitioner's burden to show deficient performance, and he can't show deficient performance just based purely on assumption, inference, and speculation. He has to come forward with some evidence. He's come forward with none here, just a host of inference and speculation. Your Honors, even assuming there was deficient performance on the part of trial counsel in this case, the claims still fail for lack of prejudice. An eyewitness placed the petitioner at the scene armed with a handgun, and another eyewitness identified petitioner as a shooter both at the preliminary hearing and out of a six-pack photographic identification. The problem is that the witness retracted the I.D. at the trial. That's why the jury was having so much trouble. Well, I understand the argument is that he retracted the I.D. because he may have been afraid, but you still have the eyewitness, an eyewitness who retracted his earlier I.D. at trial, and you have a troubled jury notwithstanding this eyewitness identification. Well, first of all, regarding the eyewitness recanting, it was easily explained by the fact that this was a gang-related shooting and that he was afraid to testify. In fact, he was unwilling to even circle or write anything on a six-pack photo identification, and I believe the detective testified that at the preliminary hearing he was extremely nervous, fidgety, and sweating. As to the fact that the jury deadlocked, I would urge this Court not to engage in the speculation that Petitioner's Counsel would like you to engage in. We do not know what the reason was for the jury's deadlock. We do not know if it pertained to the ballistics evidence, to the eyewitness identification evidence, to the fact that they were unsure as to how to read a particular instruction. We have no knowledge as to what motivated the jury's deadlock or what caused the jury's deadlock, so I would urge this Court not to engage in any speculation. Counsel, which witness was it who identified the appellant as being armed at the party? That witness was Adalberto Hernandez, who testified that Petitioner lifted up his shirt and displayed a handgun and identified himself as being a member of the Langdon gang. And that witness is separate from Orlando Chavez, who identified Petitioner as being the shooter in this case. Who was the witness that the investigator or the person that the investigator thought was the other shooter, the one the police thought was in Mexico? That person was Jesus Romero. Okay, thank you. I guess the question boils down to me. You have evidence here from Orlando Chavez identifying Petitioner. You have Hernandez saying he had a gun. You have the police recovering the gun. Then you have this evidence about ballistics. And I guess counsel's argument has some appeal to me in that if counsel had emphasized in closing the, if you will, the problems with the ballistics, when we have the jury teetering and not knowing exactly where to go, how do we just jump to the fact that that couldn't have been a great way for counsel to have helped her client in that particular situation? Well, first of all, Your Honor, we look at the way trial counsel did treat the ballistics evidence. And as I pointed out, she did. But she didn't say too much. Well, she elicited the fact that there were two 9-millimeter shell casings that were not tested by the ballistics expert. She did. And then, based on that evidence, argued that the 9-millimeter casings were, quote-unquote, being ignored. That's the best she said. Isn't that the best she said? She didn't emphasize that point. She didn't go into it. I mean, if counsel, I'm not sure counsel would have been there. If this counsel would have been there, that was not all that would have been said. And if a jury's teetering, how can one go to the fact that that doesn't make a difference in this particular case? Well, she went beyond that in eliciting the testimony from the gang expert that gang members often pass off hot guns from one gang member to the other. And, therefore, that petitioner was simply the recipient of a hot gun. That being the case, it doesn't matter what the ballistics evidence shows, because whether or not that gun was used to shoot the petitioner, based on the evidence and the argument that trial counsel made, he was just the recipient of a gun that had been passed off to him. And, therefore, he wasn't the shooter. That was entirely reasonable, Your Honor. Could I ask you one more question in response to Judge Gould's question about who had been identified as the other person who had been identified as the shooter, the person whom the LAPD ruled out? He actually was in the car with the petitioner when the gun, when they were stopped and the Glock was found. That's correct, Your Honor. And yet the petitioner's counsel told his investigator that he shouldn't contact Romero and, in effect, accepted it without what seems to me to be further corroboration. The LAPD said that Romero was in Mexico. No, that's not true, Your Honor. By the time of trial, both the police and trial counsel were aware that, I believe, both Hernandez and Chavez, the two eyewitnesses in this case, had identified Romero as being at the party, but Chavez had excluded him as being the shooter. And, therefore, by the time of trial, trial counsel and the police knew that Romero's alibi was false. Thank you. Your time has expired. Thank you, Your Honor. Thank you, Your Honors. I know I only have two minutes. I have a lot to say, though. I'll do my best. First of all, Respondent points out that the defense attorney did make arguments about ignoring the 9-millimeter casings. And what that tells us, that her theory is that it could have been the 9-millimeter. And if that was her theory, it's absolutely indefensible and no strategic reason for her not to bring up the irrefutable fact that the coroner said the fatal bullet was a 9-millimeter. That's what that evidence tells us. It tells us she didn't know what the coroner said. That's what it tells us. Related to that, why the state opinion is unreasonable, and even under Harrington, it's double deference. It's no fair-minded jurist would disagree why the state opinion is unreasonable. And I looked at it again, and here's the issue. The coroner evidence just gets missed. It gets missed by the defense attorney. It gets missed by the state court. What the state court opinion says is that the ballistics evidence was inconclusive. And what that means is that the state court judge only was looking at Star Sachs's testimony because her testimony was that it was inconclusive. It could have been this. It could have been that. I really can't say. That's inconclusive. What it really was is it was inconsistent. It was inconsistent because one person said it was inconclusive, and one person said it was a 9-millimeter. And that's what makes the state opinion unreasonable, even under Harrington. And no fair-minded jurist should disagree on that. Back to Jesus Romero. I think we made a point about an evidentiary hearing under Penholster, possibly. It's a really important fact, and it's a really important fact if the linchpin of the case is Chavez. If the linchpin of the case is Chavez, then all the more reason. You have no excuse for exploiting all the other problems with the identifications and buttressing and corroborating his recantation. So there's absolutely no excuse. This idea that it's speculative. We have police reports that say two other people saw six-packs and didn't identify either Jesus Romero or Daniel Esparza as the shooters. It never comes to light at the trial. Those are police reports. I don't think that's speculative. That should have been followed up on. And when it comes to Jesus Romero. Who has the burden of assuming that this should have been explored as to why counsel acted? Petitioner has the burden. Who has the burden of coming, of going to the lawyer and saying, give me an affidavit? I know in the Second Circuit, and I'm not 100 percent sure because it doesn't come up that often, the Second Circuit has said that these cases shouldn't be decided without an affidavit. Cases like this, not every case, should not be decided without an affidavit of the trial counsel explaining why. Because you can't know from the record. Right. And Penholzer addresses that as well. The burden is that the petitioner has the burden to make a prima facie case that there was ineffective assistance of counsel. We have the burden to show. We make a prima facie case, not based on speculation, a good faith showing of the facts, which we did here, that there's deficient performance and prejudice. And specifically when it comes to defense counsel's strategic decisions, that only goes really to deficient performance, whether or not there was a strategical justification. And under California law, when you look at Pope and Duvall, and what we all know is habeas counsel or defendants can't go to their defense lawyer and say, hey, can you please sign a declaration showing that you're signing off that you're incompetent? It never happens. Not that it never happens, but it rarely happens, and it's not fair to create a system that you can't get relief unless your trial lawyer decides to fall on a sword. So we made a prima facie case, and once you make the prima facie case, it's up to an appellate court to order an evidentiary hearing, because that's the only time you have subpoena power to bring the defense attorney into court and make a statement. Otherwise, how can you know? That's the only way you can know. And what Pinholster says is once you've made that prima facie case under 2254D, and in this case the claim is ineffective assistance of counsel, a prima facie case under Strickland, an evidentiary hearing is to prove whether those facts are true or not. So our position is that there could be no strategic reason, and so you need to have an evidentiary hearing to bear that out. It's the only way we can do it is to bring defense counsel into a courtroom and tell us what she was thinking. Thank you. Your argument time is finished. Thank you so much, Your Honor. Appreciate it. Appreciate both arguments. This case, 10-55592, Esparza v. McKeown, is submitted.
judges: Korman, GOULD, SMITH